THOMPSON *et al. v.* WILSON *et al.*

(Division B. April 8, 1935.)

[160 So. 388. No. 31679.]

(Division B.   May 6, 1935.   Suggestion of Error Overruled June 3, 1935.)

[161 So. 153.   No. 31679.]

Green, Green & Jackson, of Jackson, Herbert Gannaway, of Memphis, Tenn., and Shands, Elmore, Hallam & Causey, of Cleveland, for appellants.

770

Alfred Stoner, of Greenwood, for appellee.

Argued orally by **Garner W. Green**, for appellant, and by **Alfred Stoner**, for appellee.

ON MOTION TO CONSOLIDATE APPEALS.

**Anderson, J.,** delivered the opinion of the court, on Motion to Consolidate Appeals.

The affairs of the G. A. Wilson Banking Company were being liquidated through the state banking department in the chancery court of Sunflower county. G. A. Wilson, organizer of the bank, was dead. His children, who were his sole heirs, owned the larger part of the stock of the bank. The superintendent of banks recovered a decree against them under the double liability statute in the sum of two hundred twenty-five thousand dollars. By authority of the chancery court in which the receivership was pending, the Wilson heirs gave their notes for the amount of the decree secured by a trust agreement. Among other things this agreement provided for the transfer of one thousand five hundred seventeen and one-half shares of Greenwood Compress & Storage Company stock by the executors of Wilson's will and his heirs as collateral security for the payment of the notes. This transfer was made. Wilson's estate was being administered in the chancery court of Leflore county by the executors of his will. Fifty thousand dollars was paid on the notes. The superintendent of banks sold and transferred these notes to appellants.

Soon thereafter Wilson's executors and heirs brought appellants into court by a petition setting up, in sub-

stance, that since the indebtedness had been reduced fifty thousand dollars it was oversecured, and asked the return of part of the collateral held for its security. There was a hearing, resulting in a decree directing appellants to return to Wilson's executors and heirs six hundred fifteen shares of the Greenwood Compress & Storage Company stock. This decree was entered on December 27, 1934. Appellants, conceiving that the decree was interlocutory and not final, prayed for an appeal therefrom in open court, which was denied by the chancellor upon the ground that it was a final decree. On January 3, 1935, appellants appealed from the decree giving a cost bond alone. Appellants, however, being still of the opinion that the decree was not final but interlocutory, on the 8th day of January, 1935, applied to and obtained from one of the judges of the Supreme Court an appeal therefrom with supersedeas bond in the sum of two hundred one thousand dollars, which bond was executed and approved on January 12, 1935. Before the time of the rendition of the decree and the approval of the supersedeas bond the appellants were forced to turn over the six hundred fifteen shares of stock to Wilson's executors and heirs. After this was done the Greenwood Compress & Storage Company, which was owned and controlled by the Wilsons, issued preferred stock.

The cause is for hearing now in this court on motion of appellants that the two appeals be consolidated and heard on the merits as one appeal, and that the appeal bond with supersedeas apply to both appeals, and that pending the appeal an order be made that the six hundred fifteen shares of stock, along with the preferred stock which belongs to it, be returned to appellants to be held until the final determination of the cause. The right of appeal from a final decree is absolute; no order of the court is necessary for that purpose. Section 13, Code 1930. Section 14 of the Code provides, among other things, that the chancellor in term time or in vacation

may, in his sound discretion, grant an appeal from an interlocutory order or decree requiring the possession of property to be changed, the appeal to be applied for and bond given within thirty days, and the chancellor shall determine whether the appeal shall operate as a supersedeas, but if appeal is refused by the chancellor it may, nevertheless, be allowed by a judge of the Supreme Court.

So far as liability on the supersedeas bond is concerned, we think it wholly immaterial whether the decree appealed from is a final or an interlocutory decree. The two appeal bonds, one without and one with supersedeas, are appeals from the same decree. The supersedeas bond operated to supersede the decree without any regard for whether it was final or interlocutory. Therefore, the appellants' motion in which the surety on the supersedeas bond joins is sustained, and the two appeals are consolidated, and the six hundred fifteen shares of stock with the preferred stock that goes with it is ordered returned by appellees to appellants, subject to the control of the chancery court by future decree.

Motion to consolidate sustained.

**Ethridge, P. J.,** delivered the opinion of the court.

On December 19, 1930, the Wilson Banking Company of Greenwood, Mississippi, a banking corporation, was taken charge of by the state banking department for liquidation of its affairs. The stock of the Wilson Banking Company was all owned by G. A. Wilson, Sr., and his family up to his death in November, 1930. The bank was originally organized in 1913 with a capital stock of twenty-five thousand dollars. There was various shifting of the stock in and among the members of the family from time to time, but, at all times, the bank was operated

and controlled by, and its board of directors composed of, members of the family of G. A. Wilson, Sr.

About December 31, 1928, the capital stock of the bank was increased from twenty-five thousand dollars to one hundred thousand dollars, and members of the family of G. A Wilson, Sr., who owned all of the original stock, distributed the new stock to the various members of the family. In other words, no new capital was paid into the bank, but the increased capital stock was from the surplus of the bank.

When the bank was closed in December, 1930, for liquidation, the superintendent of banks placed G. A. Wilson, Jr., in charge as liquidating agent; he gave bond in the sum of twenty thousand dollars for the faithful performance of his duties, and acted as such for about one year, when another was placed in his stead. This second liquidating agent held the place until 1932, and then a third party was placed in charge of the liquidation of said bank. This last liquidating agent, under the direction of the state banking department, had an audit and full investigation made of the bank's affairs, and as a result thereof a bill was prepared and filed against the four children of G. A. Wilson, Sr., in their personal capacity, and against John H. McBee, G. A. Wilson, Jr., and B. G. Humphreys, executors of the estate of G. A. Wilson, Sr. It was alleged in this bill that G. A. Wilson, Sr., dominated and controlled said bank, being a man of great mental capacity and of a dominating disposition; that at various times the said G. A. Wilson, Sr., used the bank and its funds for his personal use in carrying out various deals; that a large part of the time he carried a large deposit in the bank, and that this deposit was used by him to take from the bank certain loans and collateral that he desired, and, at other times, he would take notes in his personal transactions with fictitious names, or from persons who were insolvent and not entitled to credit, and sold these notes to the bank when, in truth,

they represented his personal transactions. It was also alleged that certain of the loans exceeded the amount the bank was authorized to lend to one person, and that, by these means, the said G. A. Wilson, Sr., secured large advances from the bank. It was alleged that in some instances he would take out of said bank loans which 'it had made, and carry such loans himself, paying therefor from said deposit account, and would obtain promissory notes of divers parties, and at his pleasure, discretion, or whim, sell same to the bank and receive the proceeds of such sales from said bank.

G. A. Wilson, Sr., left a large estate, and, by will, the bulk of it went to his widow and four children, with certain bequests to three of his grandchildren.

The bill filed by the banking department sought to subject the estate of G. A. Wilson, Sr., to the demands of the Wilson Banking Company, and also sought personal judgments against the surviving children of said G. A. Wilson, Sr., the beneficiaries under his will. After suit was filed, by negotiations, a settlement was reached, and notes were given by the various children secured by land and personal property consisting of corporate stock in certain corporations, and especially stock in the Greenwood Compress Company, practically all of which was owned by the widow and children of G. A. Wilson, Sr.

It was recited in the decree that G. A. Wilson, Jr., is indebted to J. S. Love, in his representative capacity, in the sum of seventy-eight thousand nine hundred fifteen dollars and eighty cents; that May Wilson McBee is indebted to J. S. Love, in his representative capacity, in the sum of fifty-one thousand three hundred twenty-six dollars and ninety-two cents; that Floyd Wilson Humphreys is indebted to J. S. Love, in his representative capacity, in the sum of forty-seven thousand two hundred ninety dollars and forty-three cents; that Nellie Wilson Yandell is indebted to J. S. Love, in his representative capacity, in the sum of forty-seven thousand

four hundred sixty-six dollars and eighty-six cents, and judgment was rendered against each one of the above-named parties for the amount found to be due by each of them. The decree also recited that the court found that G. A. Wilson, Sr., and the said G. A. Wilson, Jr., John H. McBee, and B. G. Humphreys, and the other defendants, were, at no time, guilty of any act of fraud with reference to Wilson Banking Company. It was further found and decreed that, in view of the execution by the defendants of the instruments made a part of the decree as Exhibits A and B thereto, no lien attached because of any judgment rendered in this cause, all liens having been replaced by the attaching of Exhibits A and B. These exhibits were a deed of trust and a trust instrument. It was recited in the decree that the liability of the defendants adjudged above, and upon which the judgments were rendered, is fixed with reference to said bank and its depositors, and the said defendants, nor any of them, shall be, in any way, liable for any further amounts. It was then further adjudged, all parties consenting, that, in case the defendants should desire to sell any of the property pledged in any instrument of writing, and are unable to agree with said superintendent of banks as to the terms upon which any such property shall be released from either Exhibit A, or Exhibit B, such question shall be referred to the court upon proper petition, and by the court decided with the view of preserving the security of the banking department, and for the best interest of all parties concerned. Provided, however, that the defendants may at any time sell any number of shares of the Greenwood Compress & Storage Company at such price as the banking department, or their successors in office, and the defendants may agree upon, or in case of a failure to agree, then at such price as fixed by the chancellor of this district, but in the event

of such sale at least one-third of the sales price must be paid in cash, and the remainder to be evidenced by deed of trust on the property sold, and such balance of purchase money shall be payable within three years after sale; at least one-third of such deferred indebtedness shall be paid annually; the wording of such contract of security shall be agreed upon by the superintendent of banks, or his successor, and if there is a failure to agree, then the same shall be referred to the chancellor of the Seventh district of Mississippi; and all such cash payments and security shall be delivered to the superintendent of banks, or his successor, and applied as credits equally and pro rata on the note or notes falling due nearest the date of such sale. It was provided that this decree should be entered in cause No. 5981 on the general docket as a decree in the estate cause of said G. A. Wilson, Sr., being cause No. 5739, and in the liquidation cause of said bank, being cause No. 5750, "and this court shall retain jurisdiction over all of said causes until all obligations of this decree and the exhibits hereto attached are fully completed and consummated." It was further stipulated in the decree that all the parties agreed to such receipt of dividends and income to be disbursed in accordance with the decree, but that all parties also agreed that there should be no abuse thereof, and that the court would always be open in vacation or term time, to petitioners seeking to correct any such abuses.

The collateral trust agreement set out the indebtedness of the several children of G. A. Wilson, Sr., giving the amount of the debt and the note by which it was secured. In paragraph 10 thereof it was provided that: "It is expressly agreed and understood that regardless of anything stipulated in this collateral trust agreement, the promissory notes referred to herein, the decree or the deed of trust hereto attached, so long as the aggregate average annual payments on said notes shall amount to a minimum of twenty-five thousand dollars (meaning, at

least, six thousand two hundred fifty dollars shall be paid by each of the makers of said notes), then no default shall be declared except that all indebtedness secured by or referred to in this instrument, and in the said decree and the said deed of trust, or either, shall be paid not later than September 17, 1938, provided that all items referred to in Item 5, par. 2, of the deed of trust executed herewith shall be paid promptly as due. It is further agreed and understood that the said superintendent of banks, or his successor, will, from time to time, as the indebtedness herein referred to is reduced, release from the operation of this agreement and from the operation of the decree and Exhibit 'B' hereto, portions of the security herein and therein mentioned proportionate to its relation to the indebtedness remaining due, and if the superintendent of banks, or his successor, and the other parties are unable to agree as to the property to be released, then the matter may be submitted to the chancellor of this district, but it is understood that the indebtedness shall, at all times, be adequately secured.'' It was further provided that the ''superintendent of banks, or his successor or assistant, shall have the right to attend all meetings of directors of the said Greenwood Compress & Storage Company, and shall be notified of all meetings of directors as if he were a director therein.''

Subsequent to the rendering of the decree and the execution of the trust agreement, the Federal Compress & Warehouse Company, and L. K. Thompson, trustee, were approached by certain creditors of the Wilson Banking Company about advancing money, and buying its assets, for the purpose of procuring cash which would be helpful in the community in and around Greenwood, Mississippi, and would relieve, to some extent, the financial difficulty brought about by the closing of the banks there, and the general financial depression. There-

upon, the Federal Compress & Warehouse Company began negotiations, and purchased the notes and collateral involved, and thus became the owner of the said debts and vested with the rights of the banking department which, under the terms of the decree, could sell the notes with the collateral attached thereto.

During the years 1933, 1934, after the Federal Compress & Warehouse Company had purchased said notes with their collateral and securities, the children of G. A. Wilson, Sr., paid a total of fifty thousand dollars, the first twenty-five thousand dollars being paid on September 17, 1933, and the second in May, 1934, for the purpose of having six hundred fifteen shares of stock of the Greenwood Compress & Storage Company released, which the Federal Compress & Warehouse Company refused to do. Negotiations were conducted, but did not result in a mutual agreement. Thereupon, the children and executors of said G. A. Wilson, Sr., filed a petition in the chancery court to secure the release of six hundred fifteen shares of stock in the Greenwood Compress, etc., Company, which, after hearing, the chancellor found and directed in his decree that the funds received through the scheme under contemplation should be used in paying off certain preferred claims against the estate of G. A. Wilson, Sr., which would have the effect of discharging such claims. There was considerable evidence taken as to the total value of the shares in the Greenwood Compress & Storage Company. It was testified by John H. McBee, the husband of one of the Wilson heirs, and an executor of the will of G. A. Wilson, Sr., that said shares were of the value of four hundred dollars each. Other testimony placed the value at different figures, but the chancellor found and based their value in the decree on the basis of one hundred fifty dollars per share.

The Federal Compress & Warehouse Company contended that to so permit these shares to be withdrawn

would take from it a controlling interest in the said company, and claimed that it was entitled to have said shares under the agreement, and that to take away six hundred fifteen shares of stock would deprive it of its right, and would depreciate its security.

The evidence in the case showed that the security remaining would be largely in excess of the amount of the debt remaining.

Construing the trust agreement and the decree, we are of the opinion that the meaning thereof is that there would be no default so long as twenty-five thousand dollars per year was paid, provided each of the four children paid one-fourth thereof, and although some of the notes were due under their terms, there was no default, because the stipulation in the notes and in the trust agreement showed that it was the intention for there to be no default so long as this minimum was paid.

The principal contention here, as we understand it, of the Federal Compress & Warehouse Company, the appellant, is that the twenty-five thousand dollars minimum payment to be applied was in discharge of the principal indebtedness, and not of the interest accrued.

The instrument must be construed by taking all of its terms and the situations of the parties under which it was made.

It must be remembered that the widow of G. A. Wilson, Sr., put up her stock in the Greenwood Compress & Storage Company for her children, in order to carry out the settlement, and the whole scheme seems to have been to pay the debts to the bank by funds collected in the administration of the estate of G. A. Wilson, Sr., and to preserve the property, and it was, no doubt, realized that there might be and would be great difficulty in raising money during some years, and that the payment of twenty-five thousand dollars per year would reduce the principal debt, which was due September 17, 1938. It was, of course, contemplated that, if the situation war-

ranted, much more than the minimum would be paid each year. The chancellor retained jurisdiction of all suits pending in court to make any order or disposition that would be proper under any situation that might develop. In case the parties could not agree about what should be done, the chancellor was ready, at any time, to adjudicate and adjust any question that might arise growing out of the affairs mentioned in said decree and trust agreement, and he was the legal and impartial arbiter between contentions of the parties.

Taking all the facts in the record and looking at the whole transaction, we are of the opinion that the decree of the chancellor was warranted by the testimony, and that his construction of the instrument was a correct one.

There are certain minor contentions that we do not deal with because, in our view, they are not controlling, and are not vital to a decision of the case presented.

The chancellor was the primary judge of the instrument, and we must assume that he brought his judicial mind to bear upon what was a proper interpretation of the trust instrument, and in the rendition of his decree, and it will therefore be affirmed.

Affirmed.